OLIVE C. THOMAS *vs.* RICHARD A. THOMAS.

Plymouth.    April 10, 1973. — May 10, 1973.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Divorce,* Foreign divorce.  *Domicil.*

In a proceeding for separate support by a wife residing in this Commonwealth, the jurisdictional facts of divorce proceedings by her husband in Florida, in which the only service of process was by publication and mailing and the wife did not file an appearance or participate, were open for examination. [294-295]

In a proceeding for separate support by a wife, conclusions by a judge of a Probate Court that the husband had not acquired a domicil in Florida, and that a divorce obtained by him there was a nullity, were justified where it appeared that when the husband left the marital home in Massachusetts to attend a university in Florida for a school year on a sabbatical leave from his teaching position in Boston he intended to return to Boston to teach, that at the end of such year he returned to the marital home for a few days, that he returned to the university for the following school year, obtained the divorce, went through a marriage ceremony with another woman, lived with her thereafter in Florida for about two months, and that about two months later he moved with her to her house in Massachusetts and returned to teaching in Boston. [295]

PETITION filed in the Probate Court for the county of Plymouth on December 4, 1968.

The case was heard by *Murphy,* J.

*Paul A. Murphy* for the respondent.

*Paul J. Sullivan* for the petitioner.

HALE, C.J.    This is an appeal by Richard A. Thomas (Richard) from a Probate Court decree allowing the separate support petition of Olive C. Thomas (Olive). The judge made a report of material facts, and the evidence is reported. We summarize the facts.

The parties were married at Cambridge on April 12, 1942, and thereafter resided together in this Commonwealth, last

Thomas *v.* Thomas.

residing at Scituate. The parties' two children were eighteen and twenty-three years of age in 1966.

Richard had been employed as a teacher in the Boston school system since 1946. On March 10, 1966, he requested and obtained a sabbatical leave to attend Florida State University at Tallahassee for graduate study for the period September 1, 1966, to August 1, 1967. The leave was subject to a requirement that upon its completion he teach in the Boston school system for three years or return the salary paid during such leave. Richard intended to return to Boston and teach. On March 15, 1966, Richard filed an application for disability retirement benefits with the city based on an injury sustained in January of 1964. He left for Florida in August of 1966, starting classes on August 24, 1966. Prior to that Olive had asked to go with him, and he had refused. During the school year Richard neither saw nor communicated with Olive. On January 4, 1967, Richard filed a "Declaration of Domicile and Citizenship" with the tax assessor in Leon County, Florida in which he stated that he was formerly a resident of Scituate and that his then residence was Tallahassee, Florida. He gave "change of employment" as the reason for moving. At the end of the school year he returned to the Scituate home for a few days prior to returning to his regular summer job as a golf professional in Wolfeboro, New Hampshire. While there he telephoned Olive once a week. She visited him at Wolfeboro on one occasion during that summer. She had not seen him again until the hearing. Richard paid the mortgage interest and utilities charges on the Scituate home but otherwise furnished Olive no support. She was aided financially by her brother.

Richard returned to Florida State University in mid-August of 1967 for the 1967-1968 school year. He filed a divorce complaint in the Circuit Court for Leon County on December 7, 1967. The only service on Olive was by publication and mailing. She did not file an appearance or in any way participate in that suit. A default judgment was entered against her and a "Final Decree" of divorce was entered on March 11, 1968. On March 19, 1968, Richard

and Lorraine A. Sanborn (Lorraine), formerly of Wolfeboro, New Hampshire, went through a marriage ceremony in Georgia and thereafter lived together in Florida until June of 1968.

On May 6, 1968, Richard applied to the Rockland (Massachusetts) Trust Company for the renewal of a $1,000 loan which he had received in 1967. That loan was guaranteed by the Massachusetts Higher Education Assistance Corporation. In his application for a renewal he gave as his permanent address his home in Scituate.

The record does not indicate what Richard's status was with the Boston school department from August 1, 1967 to September of 1968 or where he and Lorraine lived from June to August of 1968. He was employed at his usual summer occupation as a golf professional during that time. In August of 1968 he and Lorraine moved to Peabody, Massachusetts, to a house owned by Lorraine. In September of 1968 he returned to teaching in Boston. In October of 1968 he went on sick leave and was paid by Boston while on such leave. On May 1, 1969, he was retired from the Boston school system because of disability. His tax free disability allowance is $633 a month.

Richard spent his time while on sick leave preparing his doctoral thesis, which he submitted in May of 1969. He returned to Tallahassee for a short period in May to defend his thesis. He received his doctorate in June of 1969. He was still living in Peabody with Lorraine and her children by a prior marriage at the time of the Probate Court hearing on July 3, 1969. Lorraine was then employed.

The determination of the question whether the judge of the Probate Court should have recognized the Florida divorce under the full faith and credit clause of the United States Constitution is basic to this case. If the Florida divorce were recognized as valid, then Richard would be under no obligation to furnish Olive's support. *Ingersoll* v. *Ingersoll,* 348 Mass. 209, 210-211. Olive not having appeared at or participated in any way in the Florida proceedings, such proceedings were ex parte and the jurisdictional facts are open for examination in this pro-

ceeding. *Rubinstein* v. *Rubinstein,* 324 Mass. 340, 343. "In general, it is well established that jurisdiction to grant a divorce must be based upon the domicil of at least one of the parties, and that the jurisdiction of a State which has undertaken to grant a divorce may be made the subject of inquiry elsewhere." *Cohen* v. *Cohen,* 319 Mass. 31, 34. *Rubinstein* v. *Rubinstein,* 319 Mass. 568, 571. Our attention has been called to Fla. Sts. § 61.021 (1969).[1] The provision that a plaintiff in this type of case must "reside" in the state for a given period requires him to have a domicil as well as a residence. See *Cohen* v. *Cohen, supra,* at 34; *Williams* v. *North Carolina,* 317 U. S. 287, 298; *Brown* v. *Brown,* 123 So. 2d 382, 383 (Fla. App.). The issue of domicil is a question of fact to be determined from all the evidence. *Lane* v. *Commr. of Corps. and Taxn.* 358 Mass. 803. One who relies on a foreign divorce must plead and prove it and must also prove his bona fide domicil at the time the divorce was granted in the foreign State (see *Bowditch* v. *Bowditch,* 314 Mass. 410, 415), aided by a presumption of the validity of the foreign decree. *Rubinstein* v. *Rubinstein,* 324 Mass. 340, 341.

We are satisfied that the facts of this case justify the judge's implicit finding that Richard had not acquired a domicil in Florida and his ruling that the Florida divorce was a nullity.

The judge further found that Richard had an earning capacity of $12,700 a year and that his wife was incapacitated by reason of a hand injury. He heard testimony as to the expenses of each party and ordered Richard to pay Olive $125 a week. We have applied the familiar standard of review and consider that the judge's order of support was not plainly wrong.

The decree of the Probate Court is affirmed. Costs and attorneys' fees are to be awarded in the discretion of the Probate Court.

*So ordered.*

---

[1] "To obtain a divorce plaintiff must reside six months in the state before filing the complaint. . . ."